```
              UNITED STATES DISTRICT COURT
               MIDDLE DISTRICT OF FLORIDA
                     TAMPA DIVISION
```

LAWRENCE MARTIN,

       Plaintiff,
v.                              Case No. 8:14-cv-2835-T-33TGW

AKERS BIOSCIENCE, INC.,

       Defendant.
_____/

**ORDER**

This cause is before the Court pursuant to Defendant Akers Bioscience, Inc.'s (Akers) Amended Motion to Stay Pending Venue and Jurisdiction Rulings by the Southern District of New York (Doc. # 14), and accompanying Memorandum of Law (Doc. # 15), both filed on November 26, 2014. Plaintiff Lawrence Martin filed a response in opposition to the Motion on December 10, 2014. (Doc. # 19). For the reasons that follow, the Court grants the Motion.

**I.  Background**

On August 19, 2003, Martin filed a Patent Application - number 10/604,810 - with the United States Patent and Trademark Office (USPTO) pertaining to a "disposable device for detecting the presence of alcohol and other substances in breath for a variety of medical purposes by employing chemical indicators that react in a prescribed manner to the presence

of a particular substance." (Doc. # 2 at ¶ 8). "The patent claims covered said device along with various attached labels, imprintations, streamers, bags, instructions, and containers, including containers in the form of a key fob." (Id.).

On January 23, 2007, Akers entered into a Purchase Agreement with Martin, among others, for assignment of the Patent Application. (Id. at ¶ 9). Thereafter, on October 23, 2007, the USPTO approved Application 10/604,810 and issued patent number 7,285,246 B1, "which does not expire until 20 years after the date on which the Patent Application was filed." (Id. at ¶ 10). On November 23, 2010, the USPTO approved and issued a second, related patent - number 7,837,936 B1. (Id. at ¶ 11).

On April 18, 2012, the Purchase Agreement was amended by the Stipulation for Settlement with Judgment Upon Default in Lawrence Martin v. Akers Biosciences, Inc., ET AL., Case No. 11-12562-CI-21 (2012 Settlement). (Id.; see Doc. # 2-4). Specifically, Section 9.9 of the Purchase Agreement, was amended to provide:

> The rights and obligations under this Purchase Agreement are assignable on the condition that the 7% royalty to which Larry Martin is entitled also applies to any cash or equivalent, including stock,

2

> received by [Akers] . . . or any affiliate for the sale, assignment and/or transfer of US Patent #7285246B1 or 7837936B1.

(Doc. # 2 at ¶ 13).

> As consideration for the purchase and assignment of the Patent Application by . . . Martin, the Purchase Agreement provided that on the first day of each calendar month beginning on March 1, 2007, until the date of expiration of the valid patent issued from Application 10/604,810, . . . Martin would be entitled to a cash payment from [Akers] equal to 7% of the previous month's Royalty Sales. The Purchase Agreement also stated that within forty-five (45) days of each monthly royalty determination date, [Akers] would deliver to [Martin] a statement setting forth the royalty sales and the calculation used to determine the monthly royalty, as well as payment of the monthly royalty.

(Id. at ¶ 16)(internal citation omitted).

According to Martin, since the dismissal of Case No. 11-12562-CI-21, "[Akers] has pursued and continues to pursue various schemes and artifices to defraud . . . Martin of the full measure of the royalties due to him under the Purchase Agreement and the 2012 Settlement." (Id. at ¶ 18). Furthermore, Martin alleges that "[Akers] and its [a]ffiliates have engaged in sales of [d]evices as to which [Martin] is entitled to a royalty, but [Akers has] concealed material information and [has] not paid to [Martin] the appropriate 7% royalty." (Id. at ¶ 19). To that end, Martin

3

suggests that Akers "has failed on an ongoing basis to properly account for royalty sales and to pay royalties due and owing to [Martin]." (Id. at ¶ 25). As a result, "[Martin] has suffered and is continuing to suffer losses and money damages for which [Akers] is liable." (Id. at ¶ 26).

### A. Present Action (Florida Action)

Martin initiated this action on October 15, 2014, in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County, Florida, setting forth claims against Akers for (1) Accounting and (2) Breach of Contract. (See Doc. # 2). On November 13, 2014, Akers removed this action predicating this Court's jurisdiction on diversity jurisdiction. (See Doc. # 1).

### B. New York Action

Hours before Martin commenced the instant lawsuit, however, Akers filed an action against Martin in the U.S. District Court for the Southern District of New York, styled Akers Biosciences, Inc. v. Lawrence Martin, No. 14-cv-8241 (New York Action). (See Doc. # 14-3). In the New York Action, "Akers has requested the New York Court to resolve the [p]arties' dispute by issuing a declaratory judgment that Martin is not owed a royalty payment based [on events noted

4

in the Florida Action Complaint,] and further that Martin is not owed any royalty payments unless and until Akers or its [a]ffiliates actually 'receives cash' for the 'sale of a particular product.'" (Doc. # 15 at 6).

On November 26, 2014, Akers filed the present Motion stating that:

> [p]ursuant to the "first filed rule," Akers is moving to stay this action pending a ruling on the venue and jurisdiction issues by the U.[S]. District Court for the Southern District of New York, where Akers filed an action for a declaratory judgment before Martin filed his claims in Florida. Thus, Akers requests this Court to stay this action so that the court where the first action was filed – the Southern District of New York – can decide what venue the parties['] dispute should be decided in accordance with the "first filed" rule.

(Id. at 2). The Motion is ripe for this Court's review.

## II. Analysis

By way of the present Motion, Akers requests that this Court "proceed no further and allow the first-filed New York action to decide the venue and jurisdiction rules." (Id. at 3)(citing Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 713 F.3d 71, 78 (11th Cir. 2013)).

The "first to file" rule states that "where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the

5

federal circuits that favors the forum of the first-filed suit under the first-filed rule." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 (11th Cir. 2005); see, e.g., United States Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 488 (8th Cir. 1990)(describing the first-filed rule as "well-established").

"[T]he 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." Cadle Co. v. Whataburger of Alice, Inc., 174 F.3d 599, 606 (5th Cir. 1999)(quoting Sutter Corp. v. P & P Indus., Inc., 125 F.3d 914, 920 (5th Cir. 1997)). Courts applying this rule generally agree "that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." (Id.) (quotations omitted); e.g., Perkins v. Am. Nat. Ins. Co., 446 F. Supp. 2d 1350, 1353 (M.D. Ga. 2006) ("[U]nder the 'first-filed rule,' the court where the subsequently filed action has been filed should defer to the court where the first action was filed to allow that court to decide whether it should exercise jurisdiction over both cases in a consolidated action.").

6

This Court notes that the application of the first-filed rule is not mandatory, but rather committed soundly to the district court's discretion. Allstate Ins. Co. v. Clohessy, 9 F. Supp. 2d 1314, 1316 (M.D. Fla. 1998); see White v. Microsoft Corp., No. 1:05-CV-00731, 2006 U.S. Dist. LEXIS 77010, * 9, ("The most basic aspect of the first-to-file rule is that it is discretionary; an ample degree of discretion, appropriate for disciplined and experienced judges, must be left to the lower courts.").

The case pending before the Southern District of New York, styled Akers Biosciences, Inc. v. Lawrence Martin, No. 14-cv-8241, was filed on October 15, 2014, at 2:02 PM (Doc. # 14-3), hours before the Florida Action was filed on October 15, 2014, at 6:02 PM (Doc. # 2).

It is undisputed that there is a substantial overlap between the Florida and New York Actions. (See Doc. # 15 at 8).[1] To begin, both actions involve the exact same parties. Furthermore, both actions concern the conflicting interpretations of the same Purchase Agreement. Namely, the parties' respective rights and obligations relating to the

---

[1]   The Court notes that on December 11, 2014, in the New York Action, Martin filed a Motion to Transfer Venue to the Middle District of Florida. (Case No. 14-cv-8241, Doc. # 9).

7

same singular issue of contract interpretation, (i.e., the circumstances under which Martin is contractually entitled and Akers is contractually obligated to pay royalty payments).

In his response, Martin contends that "the timing of [Akers'] declaratory action was the result of gamesmanship." (Doc. # 19 at 11). Therefore, Martin requests that this Court "find that compelling circumstances and equity and good conscience demand that the Middle [District of] Florida litigation take priority." (Id. at 13).

The Court recognizes that the filing of a declaratory judgment action in anticipation of suit in another forum is an equitable consideration which the Court may take into account in determining whether compelling circumstances exist to warrant an exception to the first-filed rule. Manuel, 430 F.3d at 1136. However, whatever merit there may be to Martin's argument that the New York Action falls within the "anticipatory suit exception" to the first filed rule — an issue upon which the Court expresses no opinion — the Court is of the view that this determination should be made by the U.S. District Court for the Southern District of New York. See Kate Aspen, Inc. v. Fashioncraft-Excello, Inc., 370 F. Supp. 2d 1333, 1338-39 (N.D. Ga. 2005)("[T]he first-filed

8

rule generally requires the first court to decide whether the first-filed rule should apply, or whether a narrow exception to the rule that only applies in 'compelling circumstances,' favors transfer of the first-filed case to the second court for consolidation.").

As set forth above, "the 'first to file rule' not only determines which court may decide the merits of substantially similar issues, but also establishes which court may decide whether the second suit filed must be dismissed, stayed or transferred and consolidated." Cadle, 174 F.3d at 606 (quoting Sutter Corp., 125 F.3d at 920). Courts applying this rule generally agree "that the court in which an action is first filed is the appropriate court to determine whether subsequently filed cases involving substantially similar issues should proceed." Id. (quotations omitted).

Thus, once the court determines that a likelihood of substantial overlap exists between the two suits, it is no longer up to the second filed court to resolve the question of whether both should be allowed to proceed. Cadle, 174 F.3d at 606; Mann Mfg. v. Hortex, Inc., 439 F.2d 403, 408 (5th Cir. 1971). Rather, "the proper course of action [is] for the court to transfer the case to the [first-filed] court to determine which case should, in the interests of sound

9

judicial administration and judicial economy, proceed." Cadle, 174 F.3d at 606.

Because, as noted above, it is undisputed that the Florida Action post-dates the New York Action, and there is a likelihood of substantial overlap between the two cases, the U.S. District Court for the Southern District of New York is the appropriate court to decide whether (1) the Florida Action should be allowed to proceed, or whether it should be consolidated with the New York Action, and (2) whether this Court or the U.S. District Court for the Southern District of New York is the appropriate venue to resolve this dispute. See Kate Aspen, Inc., 370 F. Supp. 2d at 1338-39 (staying action pending decision of the U.S. District Court for the Southern District of New York's determination as to whether or not the "first filed rule" should apply to the case and to the related litigation in the Southern District of New York).

For the reasons set forth above, Akers' Motion is granted. Therefore, this case is stayed and administratively closed until the U.S. District Court for the Southern District of New York has made a determination regarding the proper venue and jurisdiction of the Florida and New York Actions as detailed above. The parties shall file a status report regarding the U.S. District Court for the Southern District

10

of New York's determination as to venue and jurisdiction by **January 15, 2015**, and **every 30 days thereafter** until the U.S. District Court for the Southern District of New York makes the relevant determination.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Defendant Akers Bioscience, Inc.'s Amended Motion to Stay Pending Venue and Jurisdiction Rulings by the Southern District of New York (Doc. # 14) is **GRANTED**.

(2) The Clerk is directed to **STAY and ADMINISTRATIVELY CLOSE** this action until the U.S. District Court for the Southern District of New York has made a determination regarding venue and jurisdiction as detailed herein.

(3) The parties are directed to file a status report regarding the U.S. District Court for the Southern District of New York's determination as to venue and jurisdiction by **January 15, 2015**, and **every 30 days thereafter** until the U.S. District Court for the Southern District of New York makes the relevant determination.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of December, 2014.

VIRGINIA M. HERNANDEZ COVINGTON<br>
UNITED STATES DISTRICT JUDGE

Copies: All Counsel of Record